Good morning, Your Honors. My name is Anujan Jeevaprakash, and today I represent Mr. Ramon Dy, the appellate in today's case. With the Court's permission, I would like to reserve five minutes for rebuttal. Okay, please watch the clock. Thank you. Now, the District Court's dismissal of Mr. Dy's case should be reversed and remanded for three reasons. Now, the first reason, which is the reason that I'll be focusing on today, is because the Interstate Corrections Compact applies to the contract that governed the transfer of Mr. Dy from a California prison facility to Arizona, and therefore, he's entitled to a two-year statutory tolling period under California Code of Civil Procedure 352.1. So help me with that part. You cited in your briefs the California statute enacting the ICC. I'm actually looking at the Arizona one, which is the same, but it applies to contracts made between party states. So show me where in the statute or how you reason that the ICC would apply to a contract between California and CoreCivic. Yes, Your Honor. So while we concede that the ICC applies to state-to-state parties, it is also possible for a private party to incorporate the ICC into a contract that governs the transfer. Did it here? Yes, Your Honor. Did it do so? Yes, Your Honor. Where? So, Your Honor, while the contract did not explicitly put the ICC in the contract, there's sufficient materials within the record that show that there's at least a disputed material fact that the parties intended for the ICC to apply to the contract. Can I ask you a slightly different question? Because I shared Judge Akuta's concern about the plain text, I think, of that compact, which seems to be state-to-state. But the contract that the, I'm going to call it CCA, entered into with the California Department of Corrections is quite something. And it adopts, I looked at it because in your surreply to the motion to dismiss, you requested permission for leave to amend to bring a motion, forgive me, to bring a claim in contract, right, as a third-party beneficiary of that contract. And that contract says that all of the California prisoners are to be or are part of the class action ongoing in California and to be entitled to medical care pursuant to that contract. And it's the, I think it's the, I'm not sure how to pronounce it, the Plata case? Yes. The class action case pending there. I don't know the terms of that class action and the extent to what it does for the California prisoners who are shipped out to Arizona. But whatever it is, the contract says that CCA is to abide by it. Do we have any more about that in the record? Your Honor, so what we do have is in 2006, Governor Schwarzenegger, he made an emergency overcrowding prison population. Right. We're familiar with that. And so in that proclamation, he mentions the Plata case, and he also mentions and pretty much gives permission for the CDCR to contract with private prison facilities in pursuit and compliance with the interstate corrections. And I'm asking a really specific question. In this contract that CCA entered into with the California Department of Corrections, it's very clear that they have to comply with the settlement in Plata. Yes. And so what I'm trying to figure out is whether that settlement incorporates this notion of California prisoners being entitled to the tolling provision. Do we know that? So it does not specifically say that it entitles them to the tolling provision. So Plata doesn't or the contract doesn't? Plata doesn't, and so does the contract. It does not specifically say that in the language. Do we know how it's been applied? The Plata case? Yes. In terms of the statute of tolling under 352.1, it does not mention that it had been applied for that specific case. The request that you made was the permission to bring a breach of contract claim. Has that been to bring one in California? No, we did not. Okay. So I don't understand that. Because you requested permission to do so. It would be a four-year statute of limitations. If you filed suit in California and named a California defendant, I don't think that time has tolled or has expired even yet, has it? It would be November of 2019. The tolling period has not expired yet, but the – sorry, could you clarify your question? Well, the second – it's a little bit tricky because the first pro se complaint did not sue the State of California. The second one did name a California defendant. Yes. That was dismissed by the district court in Arizona because pro se. He talked about respondeat superior. But it's not just the claim that was dismissed. The defendant was dismissed. And yet the request that was made on his behalf, once he got a lawyer, was to have the ability to amend and bring a breach of contract claim. I don't see that the time for bringing that claim has necessarily expired yet. That's what I'm trying to determine. So my question, to be specific, is, has anybody filed suit on his behalf in California naming a California defendant in breach of contract? Does the answer no? No, Your Honor. Okay. So the other – and then I'm going to stop. But at ER-40, there's a form that indicates that he filed, that he completed the administrative claim process. Was that in California or in Arizona? I believe that was in California, Your Honor. Thank you. So going on to the ICC's applicability, it is essentially the totality of the circumstances. It was the fact that the contract between the CDCR and the CCA was created 15 days after this emergency proclamation, where Governor Schwarzenegger said for these involuntary transfers to private prison facilities to comply to the ICC standards, as well as language within the contract asking the CCA and the CCA facilities to maintain constitutional levels of medical care, protect the rights of product class members, which is also addressed in the proclamation. So there's a contract between CoreCivic and California. How does that affect a court in Arizona, though? I mean, are you saying that a court in Arizona applying Arizona law, and you don't cite the Arizona statute for the ICC in your brief, but under the Arizona ICC it says you have to treat, assuming it was applicable, which I have some questions about given that there is nothing specific making it applicable, says you have to treat prisoners that are sent by California or by another party State the same as you treat your own prisoners. So that seems to be the Arizona statute. How would an Arizona court be bound with respect to the statute of limitations with anything that California and a private entity in Arizona cook up? Yes, Your Honor. Well, the reason for that is because when the CDCR and CCA created this contract for the transfer, they knew that they were bringing in California prisoners that remained California prisoners. But Arizona is not a party to the contract. Arizona didn't agree to anything. No, but the private prison facility did. So what difference does that make with respect to what's the appropriate statute of limitations to be applied in Arizona court? Well, Your Honor, that's why we believe that it's not appropriate for a Mr. Dye situation to look at the Arizona statute. It's appropriate to look at the California statute, because under the California statute, it says that when a California prisoner is transferred to another prisoner, they should be confined and afford the legal rights of the sending State. So as Judge Grissom points out, Dye may have that argument in California. Against a California defendant. Against a California defendant under California law. But I don't see why that has anything to do with Arizona, which would be enforcing Arizona law. Yes, Your Honor. And that actually brings me to the to my second point, which is that in the district court, the magistrate judge erred in changing the venue to Arizona from the Eastern District of California. And the reason why we say that is because a substantial amount of the events subject to the claim actually did occur in California. Can I stop you before you jump in? Well, they did occur in California. Did they occur in the Eastern District of California? Yes, Your Honor. Did they? Yes, Your Honor. What were those actions? I thought the only thing that happened was he continued to suffer whatever the effects were of the surgery when he was moved to Chowchilla. So in addition to yes, Your Honor, in addition to continuing to suffer the damages that he suffered in California, the surgery also occurred in the Eastern District of California, too. And the way we view the situation. But there's not a mid-mouth claim basically arising out of the surgery. It's a failure to diagnose mid-mouth claim, right? It is a failure to diagnose. Which is Judge Wallace's point, I think. And I just want to be clear about one point, because the briefing is, I think, inconsistent on this. At the time the venue was transferred, which is the point in time Judge Wallace is calling your attention to, the complaint that was on file then did not name a California defendant. But the amended one did, and that wasn't filed until Arizona, right? So the magistrate judge did not have a California defendant in front of him or her. At the time the venue ruling was made. Is that right? Yes, Your Honor. Thank you. But the basis of the venue is, yes, the delayed diagnosis happened in Arizona. But it is a continued series of events that occurred all the way to California. Because the delay in diagnosis led to a more difficult surgery to remove the brain tumor in California. And that delay and that difficulty of the surgery that came from Arizona all the way to the Eastern District of California is what caused the permanent disabilities that Mr. Dodd faces. So my view is you have a very, very tough venue argument. But I don't think you got to your third point, and I want to make sure we're here. What is the third point? The first one is the compact you think is applicable. The second is venue. And what's the third? So, Your Honor, the third argument is that the magistrate judge and the district court actually lacked jurisdiction to change venue in the first place. And the reason for that is that for a magistrate judge to enter a dispositive order, such as what this venue change was in this particular case, all parties are required to consent. Sotomayor, was it dispositive? Mr. Dodd raised the exact same argument in the Arizona court. The Arizona court analyzed it and ruled on it and made some various decisions on it. So, obviously, there was a question about whether what statute of limitations applied. So it didn't seem like it was dispositive in California. Your Honor, the reason why I believe this particular order of transferring venue was dispositive is because it was essentially a functional equivalent of dismissal. But if it was dispositive, how come it was raised again in Arizona? And he asked for, he had a theory about how it should be deemed to be a convenient transfer forum, a venue transfer for convenience as opposed to under the rule, and therefore the statute of limitations from the transferee forum should apply. And the district court just analyzed it on its terms and denied it. So it seems like the issue came up again. So it was hardly dispositive in California. Your Honor, so that original complaint made by Mr. Bernstein, and that's why he encouraged a Second Amendment complaint. While we cannot say why he raised these issues again in Arizona, just specifically  in Arizona, that's what caused Judge Silver to show the forum State as Arizona, putting that statute of limitations in the first place. And the usage of Arizona as a forum State and utilizing those two years of statute of limitations is what caused the district court to dismiss the claim in not a timely manner. You're down to about two and a half minutes. Do you want to save that for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors. My name is Kevin Nguyen, and I'm counsel for Appalese. Please speak into the microphone. I'm sorry. Can you hear me? Thank you. I'm counsel for Appalese, Kevin Nguyen. I'd like to start with the statute of limitations issue, because this is neither really complicated nor novel. The law is established that the inquiry begins and ends with the Federal court applying the State laws of the forum in which the Federal court sits. And here the district court. Because you're talking about the 1983 claim, right? Yes. Yes, I am. And here the district court correctly applied. Arizona statute of limitations and its tolling provision. Because Arizona law does not permit tolling for incarceration, the claims are time barred. The analysis is that simple, and the inquiry should end there. But what Appalese is arguing is for a radical departure from that established law by using the ICC as an excuse to mix and match, to pick and choose the more California tolling statute to extend the limitations period on the claims, even though Arizona statutes do not permit it. And that argument is wrong for a few reasons. First, it presumes a legal conclusion that the ICC applies in the first place. It does not, because the ICC is compact among party States, as Judge Kudo mentioned, and, of course, it's not a party State. It's as simple as that. The argument also fails, though, because it's based on an incorrect premise that the legal rights, that tolling is a legal right within the meaning of the ICC. And that's incorrect, because the ICC defines what that legal right is, although  If we decide that the ICC does not apply to a private party, would we need to reach that question if we decide that this compact does not apply to a private party? He didn't — that this — in other words, the argument is that, that the, is it CCA, if I got the acronym correct? There's a lot of acronyms today. But that CCA contractually obligated itself to the compact. If we decide that the contract between CCA and the California Department of Corrections doesn't make that obligation, then do we need to reach this interpretation of what right means under the compact? No. It's unnecessary. He makes a different argument. He made it in the opposition to the motion to dismiss and ask for leave to amend on this third-party beneficiary contract theory. Did the — did the judge rule on that, or what happened with that? On the — I'm sorry, Your Honor. He made it in the surreply. They filed a surreply in opposition to the motion to amend that raised a third-party beneficiary theory on the contract because the contract incorporates the PLATA — I think I'm pronouncing that correctly — PLATA settlement in the California Department of Corrections. Has that been ruled on? Or what is the status of that? I'm not sure. But there's nothing in the record, Your Honor, that shows this — about the PLATA class action other than that it was mentioned in the contract. Does the contract say they're bound to provide that level of care and that level — we don't know anything more than that? We don't know anything more. That's not in the record. And it wasn't even mentioned in the opening briefs because this theory of extrinsic evidence to consider — to interpret the contract was not raised in the brief, but because the brief relied on a plain-text argument of the ICC. So the issue is waived. We spoke of waiver earlier today in this Court. Our position is that that issue is waived. But there's no need to address ICC if the Court finds that it doesn't apply. So turning to the venue issue, appellant's venue arguments are wrong because it's — there's no dispute here that all the events or omissions giving rise to the claim and the injury occurred in Arizona. So the fact that he may have suffered the impact of that injury or additional To hold otherwise would open the door to form shopping by plaintiffs, and that's something that this Court recognized in the Nelson v. International Payne case where it held that in cases where it's here, venue is initially improper, the Court should apply the transferee forms laws to avoid the plaintiff taking advantage of more favorable laws that he or she would not otherwise have in the proper form. On the third issue, the magistrate judge's authority, I think the Ninth Circuit District Court case law is pretty clear that transfer rulings are nondispositive. And if you look at the source of that statutory authority at 28 U.S.C. Section 636B1, it expressly lays out what a magistrate judge is permitted to do. And that says that the magistrate judge is authorized to hear and decide all enumerated motions, and those motions are a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or caution an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or permit maintenance of class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. So a motion to transfer venue is not mentioned in that. And another clue that a motion to transfer venue or a venue ruling is not a dispositive ruling is in the venue transfer statute itself, Section 1406A, which gives the Court two options when venue is improper. And the first option is to dismiss, which would be dispositive. But the second option is nondispositive, and that's simply to transfer venue to another court in the interest of justice. And here's that's what the magistrate judge did. So unless the Court has any other questions. Apparently not. Thank you. We have some time for rebuttal. So, Your Honors, there's a few points that I would like to clarify. Because of what is in the record and the amount that brings the issue of material ways intended for the ICC to apply to the contract between the CDCR and CCA, because of how complicated and because of what is on the record, this is an issue with the Court's discretion that should be remanded back to district court so that they can decide this issue in the first instance. Opposing counsel says you waived that argument by not raising it in your opening brief. What's your response to that? Your Honor, we actually this was addressed in the district court in the first place. The district court stated that in their record, they said that the plaintiff was a California State prisoner confined in Arizona subject to the ICC. And in their footnote, they stated, despite defendant's citations to unpublished sources, it appears doubtful a State can subvert the purpose of the ICC by contracting with a private entity. Right. But the opposing counsel says you waived this issue because you didn't argue it in your opening brief. What's your response to that? No, Your Honor. We did not waive it. From the opening brief, we had continuously stated that the ICC applied to the contract that governed Mr. Dye's transfer. Did you raise the extrinsic evidence rule that you're now citing? I just don't recall. No, Your Honor. We did not raise the extrinsic rule in the opening brief. This is just a variation of the argument that the contract does apply to the ICC. And this Court has held that an argument is not waived if a full factual record is developed and it's a matter of legal issues and not where further factual investigations need to be conducted for this determination to be conducted. So therefore, there's enough evidence in the factual record to be remanded back to District Court so they can decide this in the first instance whether or not the ICC does apply. And furthermore, just clarification as to what types of legal rights are afforded under the ICC. Despite whether we look at the California statute or the Arizona statute of the rights that he would have had as a California prisoner, as that's what the statute says as a core purpose of it is to serve the best interests of his offenders. And no matter where they are transferred, they should always be treated in the same way as the prisoner where they were sent from. And therefore, when Mr. Dye was transferred from California to Arizona, it doesn't matter which statute we look at. He is guaranteed the legal right of 352.1, the statutory tolling. And this statutory tolling right is a legal right that is protected under the ICC because it's not a statutory tolling that's given to any person. It's specifically given to prisoners just like Mr. Dye so he can raise the legal rights that he's able to do and get remedy for such damages that he experienced because of the transfer from California to Arizona. Thank you. Thank you. I think we have your argument. The case of Ramon Dye versus Bo Ronell is submitted.
judges: Wallace, Ikuta, Christen